## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

TREK BICYCLE CORPORATION,

        Plaintiff,

v.                                  Case No. 08-CV-198

LEMOND CYCLING, INC.,

        Defendant.

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant LeMond Cycling, Inc. ("LeMond Cycling"), for its Answer to the Complaint of Plaintiff Trek Bicycle Corporation ("Trek"), states and alleges as follows:

### PARTIES

1.      Upon information and belief, LeMond Cycling admits the allegations contained in paragraph 1.

2.      LeMond Cycling admits the allegations contained in paragraph 2.

### JURISDICTION AND VENUE

3.      With respect to the allegations contained in paragraph 3 of Trek's complaint, LeMond Cycling admits that there is diversity of citizenship between Trek and LeMond Cycling, and that the amount in controversy exceeds $75,000, exclusive of interest and costs. LeMond Cycling denies the remaining allegations in paragraph 3, as this action is duplicative of a prior commenced action pending in the United States District Court for the District of Minnesota, Civil File No. 08-CV-01010 (RHK/JSM).

80059166.1

4. With respect to the allegations contained in paragraph 4 of Trek's complaint, LeMond Cycling admits that Trek purports that venue is proper in this court pursuant to 28 U.S.C. § 1391. LeMond Cycling denies the remaining allegations in paragraph 4, and specifically denies that venue is proper due to the prior commenced action pending in the United States District Court for the District of Minnesota, Civil File No. 08-CV-01010 (RHK/JSM). LeMond Cycling specifically denies that Wisconsin law applies to the dispute.

## FACTUAL BACKGROUND

5. With respect to the allegations contained in paragraph 5 of Trek's complaint, LeMond Cycling admits that Trek markets its products to a diverse group of consumers. LeMond Cycling is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 5 and therefore denies the same, putting Trek to its proof.

6. With respect to the allegations contained in paragraph 6 of Trek's complaint, LeMond Cycling admits that Greg LeMond is a former world-class cyclist and three-time winner of the Tour de France who formed LeMond Cycling. LeMond Cycling affirmatively states that LeMond Cycling was formed for the purpose of building a brand associated with quality, innovative technology, and creativity. LeMond Cycling admits that it has licensed various trademarks associated with the LeMond name (collectively referred to as the "LeMond Brand"). To the extent that further answer is deemed required, LeMond Cycling denies the remaining allegations in paragraph 6.

7. With respect to the allegations contained in paragraph 7 of Trek's complaint, LeMond Cycling admits that it entered into a Sublicense Agreement with Trek on June 29, 1995,

granting Trek the exclusive license to use the LeMond trademarks within the Territory (as defined by the Sublicense Agreement) in connection with the manufacture, advertisement, promotion, sale and distribution of Licensed Products.  LeMond Cycling admits that the Sublicense Agreement provided that neither LeMond Cycling nor Greg LeMond would grant any third party in the business of manufacturing or selling Products, the right to use the LeMond trademarks during the contract period. LeMond Cycling admits that Exhibit 1 to Trek's complaint is a copy of the Sublicense Agreement between Trek and LeMond Cycling.  LeMond Cycling affirmatively states that pursuant to the Sublicense Agreement and related 1999 Amendment Greg  LeMond was to be provided, at no charge, fifteen (15) bikes per contract year for personal use.  LeMond Cycling also affirmatively states that Greg LeMond had the long-established ability to avail himself of employee pricing for bikes that were often purchased for charities or charity events.  To the extent that further answer is deemed required, LeMond Cycling denies the remaining allegations in paragraph 7.

8. LeMond Cycling denies the allegations contained in paragraph 8.  LeMond Cycling affirmatively states that Greg LeMond founded a small bike company in 1986 that was at times undercapitalized and that struggled to keep up with consumer demand.  LeMond Cycling also affirmatively states that it agreed to sublicense the LeMond brand to Trek after Trek approached Greg LeMond and made representations regarding Trek's ability to market and promote LeMond-branded products and after Trek promised to use its best efforts to market and promote those brands.

9. With respect to the allegations contained in paragraph 9 of Trek's complaint, LeMond Cycling admits that since 1995 Trek has paid Greg LeMond more than $5 million based on sales made of LeMond-branded products.  LeMond Cycling further admits that Trek has

invested in the design, manufacture, and marketing of LeMond-branded bicycles. LeMond Cycling affirmatively states that Trek entered into the Sublicense Agreement after a thorough assessment of the value of the LeMond brand. LeMond Cycling denies the remaining allegations contained in paragraph 9, specifically including any intimation that LeMond Cycling did not meet its contractual obligations to assist in the promotion of its brand and the allegation that Greg LeMond damaged his brand. LeMond Cycling affirmatively alleges that, to the degree the LeMond Brand has been damaged, Trek is responsible for the damage.

10. With respect to the allegations contained in paragraph 10 of Trek's complaint, LeMond Cycling admits that it entered a First Amendment to the Sublicense Agreement with Trek on August 10, 1999. LeMond Cycling admits that the First Amendment increased the minimum royalty Trek was required to pay LeMond Cycling for use of the trademarks to $350,000 per contract year and extended the term of the agreement to September 30, 2010. LeMond Cycling admits that Exhibit 2 to Trek's complaint is a copy of the First Amendment to the Sublicense Agreement. LeMond Cycling denies the remaining allegations contained in paragraph 10.

11. With respect to the allegations contained in paragraph 11 of Trek's complaint, LeMond Cycling admits that paragraph 11 accurately quotes from sections of paragraph 16.03 of the Sublicense Agreement. LeMond Cycling admits that pursuant to paragraph 2.02 of the Sublicense Agreement LeMond Cycling is required to cause Greg LeMond to be "reasonably available [ . . . ] based upon, and for the number of Working Days contained in, a promotional campaign jointly developed and reasonably approved by the parties." LeMond Cycling denies the remaining allegations contained in paragraph 11.

12. With respect to the allegations contained in paragraph 12 of Trek's complaint, LeMond Cycling admits that pursuant to section 2.01 of the Sublicense Agreement, LeMond Cycling granted to Trek "the exclusive right and license (without the right to assign the same or grant sublicenses thereunder), to use the Mark in the Territory during the Contract Period in connection with the manufacture, advertisement, promotion, sale and distribution of" LeMond bicycles and bicycle frames. LeMond Cycling further admits that the First Amendment to the Sublicense Agreement retained the above-quoted language. LeMond Cycling affirmatively states that the Sublicense Agreement and First Amendment provided that neither LeMond Cycling nor Greg LeMond would grant any third party in the business of manufacturing or selling Products, the right to use the LeMond trademarks during the contract period. To the extent that further answer is deemed required, LeMond Cycling denies the remaining allegations in paragraph 12.

13. LeMond Cycling denies the allegations contained in paragraph 13. LeMond Cycling affirmatively alleges that, to the degree the LeMond Brand has been damaged, Trek is responsible.

14. With respect to the allegations contained in paragraph 14 of Trek's complaint, upon information and belief, LeMond Cycling admits that Trek operates its business through a network of dealers. LeMond Cycling is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 14 and therefore denies the same, putting Trek to its proof.

15. With respect to the allegations contained in paragraph 15 of Trek's complaint, LeMond Cycling admits that Greg LeMond is experienced in the bicycle industry, but denies

sufficient knowledge or information as to what Trek believes he should be aware of. Upon information and belief, LeMond Cycling admits that Trek operates its business through a network of dealers. LeMond Cycling is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 15 and therefore denies the same, putting Trek to its proof. LeMond Cycling specifically denies that it or Greg LeMond has ever knowingly participated in unauthorized sales of LeMond-branded bikes.

16. With respect to the allegations contained in paragraph 16 of Trek's complaint, LeMond Cycling admits that Trek is obligated to provide Greg LeMond with 15 bikes per contract year for his personal use. LeMond Cycling further admits that since 1999, with Trek's approval and support, Greg LeMond has had the unlimited ability to purchase LeMond-branded bikes at employee pricing from Trek. LeMond Cycling affirmatively states that it was often used to support charities and charity rides, which represented a valuable promotional opportunity for the LeMond brand, from which Trek benefited as well. LeMond Cycling affirmatively states that all employee-pricing purchases, whether such purchases were for charitable purposes or gifts for friends and family of Greg LeMond, were done at employee pricing and not the retail amount referenced in paragraph 16. LeMond Cycling denies the remaining allegations contained in paragraph 16. LeMond Cycling specifically denies that it or Greg LeMond has ever knowingly participated in unauthorized sales of LeMond-branded bikes.

17. With respect to the allegations contained in paragraph 17 of Trek's complaint, LeMond Cycling admits that LeMond Zurich bikes retail for more than $2,800. Upon information and belief, LeMond Cycling affirmatively states that the sales referenced in paragraph 17 were made to two individuals who were members of a charitable organization who Greg LeMond agreed to sponsor for an AIDS Ride fundraiser and that the basis for the allegation

is a misunderstanding between the participants and the dealer. LeMond Cycling is without sufficient information to determine the truth or falsity of the remaining allegations contained in paragraph 17 and therefore denies the same, putting Trek to its proof.

18. LeMond Cycling incorporates its answer to paragraph 17 of Trek's complaint. LeMond Cycling is without sufficient information to determine the truth or falsity of the remaining allegations contained in paragraph 18 and therefore denies the same, putting Trek to its proof.

19. With respect to the allegations contained in paragraph 19 of Trek's complaint, LeMond Cycling admits that, pursuant to the long-standing arrangement with Trek described herein, Greg LeMond attempted to purchase two LaVictoires from Trek at employee pricing during the time frame referenced in Trek's complaint. To the extent any further response is required, LeMond Cycling denies the remaining allegations contained in paragraph 19.

20. LeMond Cycling admits that Greg LeMond is entitled to 15 bikes per contract year for his personal use. LeMond Cycling further admits that since 1999, with Trek's approval and support, Greg LeMond has had the unlimited ability to purchase LeMond-branded bikes at employee pricing from Trek. LeMond Cycling affirmatively states that this arrangement has often been used to support charities and charity rides, which represented a valuable promotional opportunity for the LeMond Brand from which Trek benefited as well. LeMond Cycling denies the remaining allegations contained in paragraph 20. LeMond Cycling specifically denies that it or Greg LeMond has ever knowingly participated in unauthorized sales of LeMond-branded bikes.

21. LeMond Cycling affirmatively states that Greg LeMond's statements regarding Lance Armstrong are quoted in the Complaint in the action pending in the United States District Court for the District of Minnesota, Civil File No. 08-CV-01010 (RHK/JSM). LeMond Cycling denies the remaining allegations contained in paragraph 21. LeMond Cycling specifically denies that Greg LeMond has ever disparaged Mr. Armstrong; Mr. LeMond has simply stated the truth.

22. LeMond Cycling denies the allegations contained in paragraph 22.

23. LeMond Cycling is without sufficient information to determine the truth or falsity of the allegations contained in paragraph 23 and therefore denies the same, putting Trek to its proof. LeMond Cycling affirmatively states that upon information and belief, Trek receives communications supportive of Greg LeMond and his stance against doping in professional cycling. Upon information and belief, in an attempt to bias opinions as to Greg LeMond and LeMond Cycling, Trek has deliberately chosen not to reveal such communications.

24. LeMond Cycling is without sufficient information to determine the truth or falsity of the allegations contained in paragraph 24 and therefore denies the same, putting Trek to its proof. LeMond Cycling further repeats and incorporates by reference its response to paragraph 23 above as if fully set forth herein.

25. LeMond Cycling is without sufficient information to determine the truth or falsity of the allegations contained in paragraph 25 and therefore denies the same, putting Trek to its proof. LeMond Cycling further repeats and incorporates by reference its response to paragraph 23 above as if fully set forth herein.

26. LeMond Cycling admits that Trek's president John Burke had discussions with Greg LeMond regarding his public anti-doping statements. LeMond Cycling denies the remaining allegations contained in paragraph 26.

27. LeMond Cycling denies the allegations contained in paragraph 27.

28. LeMond Cycling denies the allegations contained in paragraph 28.

29. With respect to the allegations contained in paragraph 29 of Trek's complaint, LeMond Cycling admits that in August of 2004, Trek sent LeMond Cycling a notice of breach. LeMond Cycling affirmatively states that Trek withdrew its notice of breach after LeMond Cycling served Trek with a complaint seeking a judicial declaration that LeMond Cycling was not in breach. LeMond Cycling affirmatively states that Trek withdrew its notice of breach with knowledge of LeMond Cycling's conduct and voluntarily continued to do business with LeMond Cycling for nearly 40 months. LeMond Cycling denies the remaining allegations contained in paragraph 29.

30. With respect to the allegations contained in paragraph 30 of Trek's complaint, LeMond Cycling further asserts that its December 2004 complaint speaks for itself, denies any allegation inconsistent with that complaint, and denies the remaining allegations contained in paragraph 30.

31. With respect to the allegations contained in paragraph 31 of Trek's complaint, LeMond Cycling admits that Greg LeMond met face-to-face with John Burke and that John Burke sent the email request quoted in paragraphs 31 and 32. LeMond Cycling denies any

remaining allegations contained in paragraph 31, including that the email fully reflects the tenor and content of the prior conversation.

32. With respect to the allegations contained in paragraph 32 of Trek's complaint, LeMond Cycling admits that John Burke sent the email request quoted in paragraphs 31 and 32. LeMond Cycling denies any remaining allegations inferred by paragraph 32, including that the email fully reflects the tenor and content of the conversation.

33. With respect to the allegations contained in paragraph 33 of Trek's complaint, LeMond Cycling admits that Greg LeMond sent the email statement quoted in paragraph 33. LeMond Cycling denies any remaining allegations implied in paragraph 33, including that the email fully reflects the tenor and content of related conversations between Trek and LeMond Cycling.

34. With respect to the allegations contained in paragraph 34 of Trek's complaint, LeMond Cycling admits that Greg LeMond sent the email statement quoted in paragraph 34. LeMond Cycling denies any remaining allegations implied in paragraph 34, including that the email fully reflects the tenor and content of related conversations between Trek and LeMond Cycling, and further repeats and incorporates by reference its response to paragraph 33 above as if fully set forth herein.

35. LeMond Cycling denies that Greg LeMond was ever under any enforceable obligation to Trek, restricting his right to speak honestly about matters of concern for the sport of professional cycling. LeMond Cycling is without sufficient information to determine the truth or falsity of the allegations regarding customer responses contained in paragraph 35 and therefore denies the same, putting Trek to its proof. LeMond Cycling affirmatively states that upon

information and belief, Trek receives communications supportive of Greg LeMond and his stance against doping in professional cycling. Upon information and belief, in an attempt to bias opinions as to Greg LeMond and LeMond Cycling, Trek has deliberately chosen not to reveal such communications. LeMond Cycling denies the remaining allegations contained in paragraph 35.

36. LeMond Cycling is without sufficient information to determine the truth or falsity of the allegations contained in paragraph 36 and therefore denies the same, putting Trek to its proof. LeMond Cycling further repeats and incorporates by reference its answer in paragraph 35 above as if fully set forth herein.

37. LeMond Cycling is without sufficient information to determine the truth or falsity of the allegations contained in paragraph 37 and therefore denies the same, putting Trek to its proof. LeMond Cycling further repeats and incorporates by reference its answer in paragraph 35 above as if fully set forth herein.

38. LeMond Cycling admits that in an interview with "Tour" Greg LeMond responded to the question "[y]ou haven't been in touch with Road Racing for a while," with "[t]his is for my problems with Armstrong. I criticized his cooperation with Michael Ferrari and for that reason got into big trouble with Trek. If I had loudly said what I thought this would have been suicide for my business." LeMond Cycling denies the remaining allegations contained in paragraph 38 and specifically asserts that, to the extent that any damage to the LeMond brand has occurred, Trek is responsible.

39. LeMond Cycling is without sufficient information to determine the truth or falsity of the allegations contained in paragraph 39 and therefore denies the same, putting Trek to its

proof. LeMond Cycling affirmatively states that upon information and belief, Trek receives communications supportive of Greg LeMond and his stance against doping in professional cycling. Upon information and belief, in an attempt to bias opinions as to Greg LeMond and LeMond Cycling, Trek has deliberately chosen not to reveal such communications.

40. With respect to the allegations contained in paragraph 40 of Trek's complaint, LeMond Cycling admits that John Burke and Greg LeMond met in November 2007 and that John Burke informally advised Greg LeMond that Trek would not be extending the agreement with LeMond Cycling beyond its 2010 initial term. LeMond Cycling denies the remaining allegations contained in paragraph 40 and affirmatively states that, upon hearing Trek's position, Greg LeMond indicated that he would have to explore his options.

41. With respect to the allegations contained in paragraph 41 of Trek's complaint, LeMond Cycling admits that it served Trek with a complaint on March 20, 2008. LeMond Cycling denies the remaining allegations contained in paragraph 41.

42. With respect to the allegations contained in paragraph 42 of Trek's complaint, LeMond Cycling admits that it served a complaint in March of 2008 stating a claim for a breach-of-contract based on Trek's failure to use its best efforts in the promotion and marketing of LeMond-branded products within the Territory as defined by the Sublicense Agreement. LeMond Cycling admits that the cover letter for its March 2008 Complaint states that the Complaint was not "publicly-available at this time." LeMond Cycling denies the remaining allegations contained in paragraph 42.

43. With respect to the allegations contained in paragraph 43 of Trek's complaint, LeMond Cycling incorporates each of the foregoing paragraphs as if fully set forth herein.

44. With respect to the allegations contained in paragraph 44 of Trek's complaint, LeMond Cycling admits the allegations contained in paragraph 44.

45. With respect to the allegations contained in paragraph 45 of Trek's complaint, LeMond Cycling admits the allegations contained in paragraph 45.

46. With respect to the allegations contained in paragraph 46 of Trek's complaint, LeMond Cycling admits the allegations contained in paragraph 46.

47. With respect to the allegations contained in paragraph 47 of Trek's complaint, LeMond Cycling states that the Sublicense Agreement speaks for itself and denies any allegations that are inconsistent with that agreement.

48. With respect to the allegations contained in paragraph 48 of Trek's complaint, LeMond Cycling admits that Trek created a new LeMond product line for the 2006 model year; designed and launched the 2007 LeMond Tete de Course—which was the lightest production bicycle frame in the industry; conducted marketing campaigns for the LeMond line; and sold, marketed, and advertised the LeMond bikes and frames through retailers, distributors, and dealers. LeMond Cycling denies the remaining allegations contained in paragraph 48 and specifically denies that Trek used its contractually required "best efforts" in exploiting the LeMond Brand.

49. LeMond Cycling denies the allegations contained in paragraph 49. LeMond Cycling affirmatively states that, to the extent the LeMond brand or Trek's other business interests have been damaged, Trek is responsible.

50. With respect to the allegations contained in paragraph 50 of Trek's complaint, LeMond Cycling admits the allegations contained in paragraph 50.

51. With respect to the allegations contained in paragraph 51 of Trek's complaint, LeMond Cycling admits that Trek purports to seek a declaration that it has fully complied with the "best efforts" clause of the Sublicense Agreement. LeMond Cycling denies any remaining allegations contained in paragraph 51 and specifically denies that Trek used its best efforts, as required by the Sublicense Agreement, or is entitled to the relief that it seeks.

52. With respect to the allegations contained in paragraph 52 of Trek's complaint, LeMond Cycling admits that Trek purports to seek a declaration that the "best efforts" clause is indefinite and unenforceable. LeMond Cycling denies any remaining allegations contained in paragraph 52 and specifically denies that Trek used its best efforts, as required by the Sublicense Agreement, or is entitled to the relief that it seeks.

53. With respect to the allegations contained in paragraph 53 of Trek's complaint, LeMond Cycling incorporates each of the foregoing paragraphs as if fully set forth herein.

54. LeMond Cycling denies the allegations contained in paragraph 54.

55. LeMond Cycling denies the allegations contained in paragraph 55.

56. With respect to the allegations contained in paragraph 56 of Trek's complaint, LeMond Cycling admits the allegations contained in paragraph 56.

57. With respect to the allegations contained in paragraph 57 of Trek's complaint, LeMond Cycling admits that Trek purports to seek a declaration that it is entitled to terminate the

Sublicense Agreement, discontinue using the trademarks, and discontinue paying royalties to LeMond Cycling.

58. With respect to the allegations contained in paragraph 58 of Trek's complaint, LeMond Cycling states that the Sublicense Agreement speaks for itself and denies any allegations that are inconsistent with that agreement. LeMond Cycling affirmatively states that pursuant to paragraph 2.02 of the Sublicense Agreement LeMond Cycling is required to cause Greg LeMond to be "reasonably available [ . . . ] based upon, and for the number of Working Days contained in, a promotional campaign jointly developed and reasonably approved by the parties." LeMond Cycling denies the remaining allegations contained in paragraph 58.

59. LeMond Cycling denies the allegations contained in paragraph 59 and specifically denies that Greg LeMond ever rendered his services in anything but a "professional and conscientious manner."

60. With respect to the allegations contained in paragraph 60 of Trek's complaint, LeMond Cycling admits that Trek purports to seek a declaration that LeMond Cycling's alleged failure constitutes a nonoccurrence of a condition and given all the alleged damage that has allegedly been done to Trek and the LeMond brand, it is too late for the condition to occur, and therefore, Trek may treat its duty as discharged and the contract as terminated.

61. LeMond Cycling denies all other allegations contained in the complaint that are not expressly admitted.

**AFFIRMATIVE DEFENSES**

1. As separate and affirmative defenses, and without admitting any of Trek's

allegations or conceding the burden of proof as to any issue found to be an element of any of Trek's causes of action rather than an element of an affirmative defense, LeMond Cycling alleges the following separate and independent affirmative defenses based upon information now known. LeMond Cycling reserves its right to amend its affirmative defenses.

2. Trek's claims fail to state a claim upon which relief can be granted.

3. Trek's claims are barred by the doctrine of estoppel.

4. Trek's claims are barred by the doctrine of waiver.

5. Certain promises that Trek claims to have been breached fail for lack of consideration.

6. Trek's claims are barred because to the degree any damage has been done to any of Trek's brands, it has been caused, in whole or in part, by Trek.

7. Trek's claims are barred based on Trek's prior breach of the Sublicense Agreement.

8. Trek's claims are barred by the doctrine of unclean hands.

9. Trek's claim for relief fails for failure to mitigate damages.

10. Venue is improper due to the earlier commenced action presently before the United States District Court for the District of Minnesota.

Wherefore LeMond Cycling respectfully requests that the Court:

1. Dismiss Trek's complaint with prejudice;

2. Award LeMond Cycling costs and fees; and

3. For any additional relief that this Court deems just and equitable.

DATED: May 22, 2008

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By  s/Denise S. Rahne
    Christopher W. Madel (#23097)
    Denise S. Rahne (#331314)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

GODFREY & KAHN S.C.
Todd G. Smith
Linda S. Schmidt
One East Main Street, Suite 500
Post Office Box 2719
Madison, WI 53701-2719
Telephone: (608) 284-2653
Facsimile: (608) 257-0609
tsmith@gklaw.com

ATTORNEYS FOR DEFENDANT